IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, et al. <br><br> Defendants. | No. CV-F-92-5068 OWW <br><br> MEMORANDUM DECISION AND ORDER AWARDING COSTS TO DEFENDANT AND CROSS-DEFENDANT SHELL OIL COMPANY (Doc. 1511) |

On September 9, 2009, Defendant and Cross-Defendant Shell Oil Company ("Shell"), timely filed a Bill of Costs and supporting declaration.

On September 21, 2009, the United States and the State of California Department of Toxic Substances and BNSF Railway Company and Union Pacific Railroad Company (collectively "Governments," "Railroads" and/or "Objectors") filed objections to the Bill of Costs.

On September 25, 2009, Shell filed a reply to these

objections.

On October 30, 2009, the Governments and Railroads filed the Declaration of Marc A. Zeppetello in support of the objections to the Bill of Costs.

A. **LATE DECLARATION**.

Shell objects to the October 30 declaration in support of the objections on the ground that the declaration is untimely.

The October 30 declaration is untimely.  Rule 292(c), Local Rules of Practice, provides that objections to a cost bill shall be filed within seven days from the date of service of the cost bill.  However, because Shell has addressed the objections in the October 30 declaration on the merits, the October 30 declaration will be considered.

B. **MERITS OF COST BILL**.

Shell's Bill of Costs sought costs as follows:

| | |
|---|---|
| Fees of the Clerk | $202.86 |
| Fees of the court reporter for all or any part of that transcript necessarily obtained for use in the case | $28,135.88 |
| Fees for exemplification and copies of papers necessarily obtained for use in the case | $15,564.40 |
| Other costs | $255.00 |
| | $44,158.14 |

Following objections, Shell reduced the Bill of Costs to $40,389.83 by deleting the following from the Bill of Costs:

**Deposition Transcripts**

2

          Peggy J. Crawford - $148.77
          Jacob Rajfer - $216.70

          Thomas Delfino - $873.20

          **Exemplification and Copy of Papers**

          Reproduction of boxes of documents for Lee Arvin Case - $2,349.03

          Reproduction of boxes of documents for Lee Arvin Case - $1,053.81

Consequently, Shell seeks costs as follows:

| | |
|---|---:|
| Fees of the Clerk | $202.86 |
| Fees of the court reporter for all or any part of that transcript necessarily obtained for use in the case | $26,897.21 |
| Fees for exemplification and copies of papers necessarily obtained for use in the case | $12,161.56 |
| Other costs | $255.00 |
| | $39,516.63 |

       1.   <u>Deposition Costs</u>.

Objectors argue that certain of the deposition transcripts should not be awarded as costs, on a number of grounds.

Deposition costs are taxable if they are reasonably necessary for trial. *Evanow v. M/V Neptune*, 163 F.3d 1108, 1118 (9th Cir.1998). The District Court has discretion to award or deny costs of depositions not used at trial. *See Washington State Dept. of Transp. v. Washington Natural Gas Co., Pacificorp,* 59 F.3d 793, 806 (9th Cir.1995). "'Whether a transcript or

deposition is "necessary" must be determined in light of the facts known at the time the expense was incurred ....'" *Sunstone Behavioral Health, Inc. v. Alameda County Medical Center,* 646 F.Supp.2d 1206, 1219 (E.D.Cal.2009), citing *Barber v. Ruth*, 7 F.3d 636, 645 (7th Cir.1993).

Objectors assert that the deposition costs for Kelly Adams, H. Edwards, Merle Engelka, Halbasch, Ann Day Millan, Irvine Phillips, Gilbert Ray, and Benjamim Ulloa should be disallowed because these persons were not named in the Pretrial Order as witnesses by deposition or otherwise and did not testify at trial.

However, as Shell notes, Ann Day Millan and Benjamin Ulloa are listed as witnesses in the Pretrial Order. It is not open to dispute that a designated trial witness should be deposed.

As to the costs for the depositions of H. Edwards, Merle Engelka, and Halbasch, Shell refers to the Local Rule of Practice, requiring objections to a cost bill to set forth "the specific objections to claimed items with a statement of grounds for objection."

Objectors complain that the deposition costs for Kelly Adams, Ann Day Millan and Lawrence Wheeler on the ground that these depositions were taken in 1995 in the Railroads' original action against Brown & Bryant, Inc. before the Governments filed their cost recovery actions:

> B & B filed a third-party complaint against several chemical suppliers, including Shell, in the Railroads' action, but this Court

|   |   |
|---|---|
| 1 | granted motions to dismiss B & B's arranger liability claims against the suppliers. |
| 2 | Shell was not required to engage in discovery until after the Governments brought claims |
| 3 | against Shell in late-1996. |

Shell responds that the Arvin site was placed on the NPL in 1989 and that the EPA began site investigation in 1989 and to formulate a remedy in the early 1990s. EPA issued an administrative order against the Railroads in 1991 and the Railroads filed their contribution action against Shell in 1992. Shell contends that it was necessary to obtain these depositions relating to the site prior to the Governments' filing of its action and that numerous documents and depositions from the earlier Brown & Bryant case were used throughout the trial that concerned the history of prior use of the site. Shell points to the Governments' attempt to introduce the 1993 deposition of Laurie Jardine at trial on May 14, 1999. Addressing the issue of foundation, Mr. MacAyeal stated:

> Judge, the point is that there were many depositions taken in this case before the lawyers got involved. We were all new to the case, but counsel for the railroad got the file from their predecessors. They have all those depositions, they have all the exhibits. They can confirm whether they are accurate or inaccurate, and the witnesses from the railroads identified them, they are all marked. They are all Bates-stamped wit the same sequence and there should not be a dispute on foundation at this point.

Objectors further contend that the deposition costs for Sally W. Bilodeau, Richard C. Casias, David Clark, R. Reid, Benjamin Ulloa and Richard S. Wooley, which Objectors asserts

were taken in the related but separate actions concerning the Brown & Bryant Shafter site, including BNSF's action against Hercules and the DSTC's cost recovery action against BNSF, Shell, and others.  Objectors assert that, other than the deposition of Richard Wooley, the depositions were taken in January or February, 1999, were attended solely by counsel in *Atchison, Topeka & Santa Fe Railway Co. v. Hercules, Incorporated,* No. CV-F-96-5979 OWW/DLB ("Consolidated Shafter Cases"), and concerned only the Bryant & Brown Shafter site.

However, as Shell notes, Richard C. Casias, David Clark, Benjamin Ulloa, and Richard Woolley were listed as witnesses in the Pretrial Order. Shell contends that "[t]he Arvin and Shafter sites were both owed by B & B and were consolidated for purposes of discovery for an extended time" and that the depositions of Bilodeau, Casias, Clark, Reid, Ulloa, and Woolley were necessary for both sites.  As to Sally W. Bilodeau and R. Reid, Shell contends that the short excerpts of those depositions do not establish that they only involved the Shafter site:

> Rather, the excerpts show that the depositions were taken in February 1999, not only before this trial commenced, and many of the depositions taken in these cases related to both the Arvin and Shafter sites.  These depositions were reasonably necessary for trial in light of the facts known at the time the expense was incurred.

Under a parity of reasoning, the depositions costs for those witnesses listed on the Pretrial Order are a fortiori appropritate.  Objectors do not suggest an allocation to

6

eliminate testimony about the Shafter site, probably because Brown & Bryant used common operating methods.  However, as to Sally W. Bilodeau and R. Reid, Shell does not provide any excerpt from those depositions establishing that both the Arvin and Shafter sites were discussed.  Consequently, those two deposition costs ($447.60 and $414.95, respectively) are disallowed.

Objectors contend that deposition costs for John Connor, Irvine Phillips, and Gilbert Ray should be disallowed because Shell has not submitted invoices or other backup documentation for these costs.  However, Shell's reply submits a copy of Lewis Brisbois's Disbursement Diary and A/P Cash Disbursements Detail Report, itemizing the costs of those depositions.  These costs are allowed.

In principle, a deposition from a CERCLA historical witness or from a witness not ultimately called at trial to testify, is still useful to the preparation for trial of the case.

    2. <u>Trial Transcripts</u>.

Objectors contend that Shell's request for costs of daily trial transcripts should be disallowed to the extent that Shell paid a premium for expedited trial transcripts.  Objectors assert that Shell did not obtain prior approval from the Court for this expense, the Governments did not order expedited transcripts, and the Court did not require daily transcripts.

"As a general rule, daily trial transcript costs should not be awarded absent court approval prior to the trial ... However, a District Court may overlook the lack of prior approval if the

7

case is complex and the transcripts proved invaluable to both the counsel and the court." *Manildra Mill. Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1184 (Fed.Cir.1996); *see also Maris Distributing Co. v. Anheuser-Busch, Inc.,* 302 F.3d 1207, 1226 (11th Cir.2002), *cert. denied*, 537 U.S. 1190 (2003):

> Although we do not believe that the costs associated with expedited trial transcripts should be allowed as a matter of course, lest litigation costs be unnecessarily increased, the district court found that expedited transcripts were necessary in this case given its length and complexity.  Under the circumstances, we cannot say that the district court clearly abused its discretion by reaching this conclusion.

*But see Battenfield of America Holding Co., Inc. v. Baird*, 196 F.R.D. 613, 618 (D.Kan.2000):

> While the court expresses no opinion as to whether daily copy was necessary for counsel at trial, the court is in the best position to assess the value of the daily copy to it ... Suffice it to say, daily copy was not necessary for the court's handling of the case ... The court cannot recall any occasions in which it even looked to daily copy for guidance in analyzing an evidentiary issue.  While daily copy may have aided the parties in resolving various disputes amongst themselves, the court is fairly confident that it could have resolved those issues for the parties in the absence of daily copy.  In short, this case was neither so complex nor so lengthy as to justify imposing such 'special costs' on BKD.

Shell argues that these costs should be awarded in light of the complexity and length of the trial.  This action involved numerous parties, the action was tried to the Court without a jury, the trial lasted 27 days at which dozens of witnesses

testified and hundreds of exhibits were submitted.  Extremely complex scientific testimony was given by experts.  Shell asserts that the daily transcripts "were invaluable to the party's preparation and organization of the case at trial and believed also to be invaluable to the court's management of the case."

The daily transcripts provided valuable assistance to the Court and the parties and were referred to during the trial in making rulings and in confirming accuracy or existence of facts. Shell's costs for expedited trial transcripts are allowed.[1]

### 3. Copying Costs.

Objectors argue that the costs of copying CD-Roms of chemical documents database ($3,750) and boxes of DTSC documents ($2,140.91) should be disallowed.  Objectors contend that the copying of a database made by Brown & Bryant's attorneys relating to other chemical manufacturers with no indication that the CD-Roms of chemical documents database was specific to the Arvin site, as opposed to the Shafter site and that these documents were not introduced at trial, necessitates disallowance of this cost.  As to the boxes of DTSC documents, Objectors contend that Shell has provided no explanation why these documents were necessarily obtained for use in the case.

---

[1] Objectors further assert that Shell's claimed costs for trial transcripts appear to be duplicative, "in that different costs for each day of trial transcripts are included on two different invoices from the two court reporters."  However, two different court reporters transcribed the trial, alternating during each trial day in order to timely complete the daily transcript so it was available for use the evening of each day's testimony.  There is no billing duplication.

1    The District Court has discretion to award copying costs for
2 any document necessarily obtained for use in the case even if the
3 documents are not introduced into the record. *Haagen-Dazs Co.,*
4 *Inc. v. Double Rainbow Gourmet Ice Cream, Inc.*, 920 F.2d 587, 588
5 (9th Cir.1990).

6    As to the CD-Roms of chemical documents database, Shell
7 asserts that these documents were necessary for both cases
8 because the Arvin and Shafter sites were owned by Brown & Bryant
9 and the two cases were consolidated for discovery. Shell asserts
10 that the boxes of DTSC documents were produced by DTSC and were
11 determined to be necessary for the case at the time the costs
12 were incurred. They arguably provide a foundation for DTSC cost
13 recovery and the cost recovery accounting experts. Shell
14 provides no other explanation why these documents were
15 necessarily obtained for use in the case. This is insufficient
16 justification for these costs. They are denied.

## CONCLUSION

18    Shell Oil Company shall recover costs in the amount of
19 $32,763.17.
20    IT IS SO ORDERED.
21 Dated:   July 16, 2010                /s/ Oliver W. Wanger
                                         UNITED STATES DISTRICT JUDGE